O    JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **MICHAEL MANN,**<br><br>       **Plaintiff,**<br><br>  **vs.**<br><br>**JEFFREY BEARD, et al.,**<br><br>       **Defendants.** | Case No.: SACV 13-0560 DOC (MAN)<br><br>**ORDER**<br><br>**ADOPTING IN PART REPORT & RECOMMENDATION [18];**<br><br>**DENYING PETITIONER'S § 2254 PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is Magistrate Judge Nagle's Report and Recommendation ("R&R") (Dkt. 18). On October 31, 2014, Magistrate Judge Nagle recommended that the District Court grant Petitioner Michael Mann's 28 U.S.C. § 2254 petition and vacate his 2008 conviction in Orange County Superior Court Case No. 01NF3414 on the grounds that the California Court of Appeals unreasonably applied U.S. Supreme Court precedent on the Sixth Amendment's Speedy Trial Clause and that the state violated Petitioner's right to a speedy trial (Ground One). For the reasons below, the District Court declines to adopt the portion of the R&R analyzing Ground One, *see* R&R at 16:15-32:17, but adopts the remainder of the R&R.

**I. Background**

The Court adopts the sections of the R&R describing the factual background and procedural history of this case. *See* R&R 2:1-8:3, 12:17-16:13.

Subsequent to the Magistrate Judge's issuance of the R&R, Respondent filed objections to the R&R on the basis that the state court's decision was not "unreasonable" because fair-minded jurists could debate whether Petitioner's federal speedy trial rights were violated under applicable Supreme Court case law. *See* Objections, Nov. 17, 2014 (Dkt. 19). The R&R and objections were then forwarded to this Court for review.

## II. Legal Standard

### A. Standard of Review of Magistrate Judge Reports and Recommendations

This Court is required to make a de novo review upon the record of those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. Standard of Review of State Court Decisions Under AEDPA

Under 28 U.S.C. § 2254(d), the federal habeas court cannot override a state court's decision and grant a writ of habeas corpus for a person in state custody unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The first prong is the prong at issue in this case. Magistrate Judge Nagle correctly stated the standard of review under the first prong:

> Clearly established federal law, for purposes of Section 2254(d)(1) review, means Supreme Court holdings in existence at the time of the relevant state court decision. *Greene v. Fisher*, ___ U.S. ___, 132 S. Ct. 38, 44-45 (2011); *see also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1399 (2011); Richter, 131 S. Ct. at 785. Deference to a state court decision is required absent a Supreme Court decision that either "'squarely addresses'" the issue in the case before the state court or establishes a legal principle that "'clearly extends'" to a new context. *Varghese v. Uribe*, 736 F.3d 817, 824 (9th Cir. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 1547 (2014); *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009); *see also Richter*, 131 S. Ct. at 786 (it "'is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific

> legal rule that has not been squarely established by'" the Supreme Court) (citation omitted). While circuit precedent is relevant "to ascertain whether [a circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," circuit precedent may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, ___ U.S. ___, 133 S. Ct. 1446, 1450-51 (2013) (per curiam).
>
> Under Section 2254(d)(1)'s first prong, a state court decision is "contrary to" clearly established federal law if the state court applies a rule that contradicts the relevant Supreme Court holdings or reaches a different conclusion than that reached by the high court on materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003).

R&R at 9-10.

"Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). "Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004). However, habeas courts cannot "introduce[] rules not clearly established under the guise of extensions to existing law." *Id.* Obviously, *"*the difference between applying a rule and extending it is not always clear." *Id.*

> "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded by Section 2254(d). *Richter*, 131 S. Ct. at 786 (citation omitted); *see also id.* at 786-87 (a petitioner is required to prove that the state decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). "Under § 2254(d), a habeas court must determine what arguments supported or, as [in the case of a silent denial of relief], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court." *Id.* at 786. A federal court has the authority to issue habeas relief only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Id.*; *see also Murray*, 745 F.3d at 998 ("The deferential standard imposed under AEDPA cloaks a state court's determination with reasonableness, so long as 'fairminded jurists could disagree' as to whether a claim lacks merit.") (citation omitted).

3

> "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855 (2010) (citations omitted). "[T]he purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene*, 132 S. Ct. at 43 (citation and quotation marks omitted); *see also Richter*, 131 S. Ct. at 786 (the AEDPA standard was intended to be "difficult to meet"). "The petitioner carries the burden of proof." *Pinholster*, 131 S. Ct. at 1398.

R&R at 11-12.

### C. Supreme Court Precedent on the Sixth Amendment Speedy Trial Clause

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const. amend. VI. In determining when a person is "accused," the U.S. Supreme Court has held that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971). The principles underlying the Speedy Trial Clause are the belief that speedy trials "prevent undue and oppressive incarceration" or other restraints on liberty (including bail) prior to trial. A speedy trial "minimize anxiety and concern accompanying public accusation" for the accused, his family, and friends. They prevent disruption to the accused's employment, draining of his financial resources, curtailing of his associations, and subjecting him to public obloquy. In addition, a speedy trial "limit[s] the possibilities that long delay will impair the ability of an accused to defend himself." *Id.*

In *Dillingham v. United States*, 423 U.S. 64 (1975), the Court held that the Sixth Amendment speedy trial protection attached when the defendant was arrested, arraigned, and released on bond, even though he was not indicted until 22 months later. The Court held that "[i]nvocation of the speedy trial provision thus need not await indictment, information, or other formal charge." *Id.* at 65.

In *United States v. Loud Hawk*, 474 U.S. 302 (1987), the government indicted the defendants in November 1975 and filed a superseding indictment in December 1975. In April

1976, the district court dismissed the indictment. The government appealed the dismissal. On remand, the court ordered the government to re-indict the defendants, which the government did in early 1980.The case then proceeded for three more years. In 1983, the district court again dismissed the indictment, this time on the ground that the right to a speedy trial had been violated. The Court held that the period between the 1976 dismissal and the 1980 re-indictment (while the case was on appeal) should be excluded from the length of delay considered under the Speedy Trial Clause of the Sixth Amendment. *Id.* at 311. The Court noted that, during that time, the respondents were neither under indictment nor subject to bail and further judicial proceedings would have been necessary to subject respondents to actual restraints. The Court indicated that, in those instances where the defendant is subject to incarceration or bail, the courts would have to engage in a balancing of the restrictions imposed and their effect on the defendant, the necessity for delay, and the length of delay. *Id.* at 311, n.13. After dismissal of the charges, the Court concluded, "'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" *Id.* (quoting *United States v. MacDonald*, 456 U.S. 1, 9, 7 (1982)).

In *Doggett v. United States*, 505 U.S. 647 (1991), the Court held that the Sixth Amendment speedy trial protection attached when the defendant was indicted, even though he was not arrested and was apparently unaware of the indictment until more than eight years later.

**III.   Discussion**

The Supreme Court has not directly addressed the question of what to do when the facts are like they are in this case. *Marion* holds that the Speedy Trial Clause is triggered by "formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." 404 U.S. at 320. Here, with regard to the first prong, a felony complaint was filed against Petitioner in December 2001. However, his preliminary hearing was not held and no information was filed until 2008. Thus, technically, there was no indictment or information to trigger the clock until 2008. With regard to the second prong, Petitioner was arrested, arraigned, and released on bail in December 2001. However, the state court exonerated his bond in 2002

when the state court realized that he was in federal custody. Thus, technically, Petitioner's liberty was not restrained by the state after 2002. (Although in reality the state court likely would not have exonerated his bond but for the fact that Petitioner's liberty was already restrained because he was in federal custody.) In addition, his preliminary hearing was not held until 2008, i.e., no court determined that there was probable cause to hold him over for trial until 2008.

In addition, the Attorney General argues that none of the concerns behind the Speedy Trial Clause are implicated in this case. Respondent argues that the Petitioner did not face negative consequences to his liberty, employment, finances, relations, or reputation as a result of the delay between arrest and trial because Petitioner was in federal custody during that time.

The Court does not agree with this last argument because even someone who is already serving out another sentence can experience anxiety about having additional pending charges against him. So can his family and friends. He may also drain his financial resources paying for a lawyer to work on his case. As Petitioner has alleged in this case, he may lose the potential opportunity to serve his federal and state sentences concurrently and he may lose opportunities to participate in certain programs in prison because of pending charges against him.

However, Respondent is correct that there is no Supreme Court case law directly on point and reasonable minds can differ on how the Supreme Court precedent should be applied in this case. This is evident from the Ninth Circuit's own internal debate over whether a felony complaint alone can trigger the Speedy Trial Clause.[1] Petitioner urges that his 2001 arrest,

---

[1] As noted by the parties, the Ninth Circuit is divided on whether a felony complaint alone can trigger the Speedy Trial Clause. *Compare United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975) ("[T]he filing of a criminal complaint, or the indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment") (quoting *Northern v. United States*, 455 F.2d 427, 429 (9th Cir. 1972) (per curiam)); *Benson v. United States*, 402 F.2d 576, 579 (9th Cir. 1968) ("We have held that the right to a speedy trial guaranteed by the Sixth Amendment does not arise until a formal complaint is lodged against the defendant."); *and United States v. Gonzalez-Avina*, 234 F. App'x 758, 759 (9th Cir. 2007) (assuming without deciding that the pretrial delay for purposes of the petitioner's speedy trial right should be measured from the filing of the federal complaint) *with Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978) (holding that the Sixth Amendment right to a speedy trial did not attach until the defendant was arrested and arraigned, not when the complaint was filed); *Favors v. Eyman*, 466 F.2d 1325, 1327-28 (9th Cir. 1972) (holding that the Sixth Amendment right to a speedy trial did not attach when the complaint was filed). The California Supreme Court has interpreted *Marion* to mean that "the filing of a complaint is by itself insufficient to trigger the protection of the right to a speedy trial under the federal Constitution." *People v. Hannon*, 19 Cal. 3d 588, 605-066 (1977). In concluding that a felony complaint alone,

arraignment, and release on bail is a sufficient trigger under *Marion*. Reply at 15. However, Petitioner's bond was exonerated. The fact that the state court exonerated the bond knowing that Petitioner's liberty would still be restrained in federal custody even after the bond was exonerated is potentially a basis for a court to hold that the exoneration was irrelevant to the Sixth Amendment analysis. However, there is no Supreme Court precedent in this area. In light of the facts that (1) Petitioner's preliminary hearing was not until 2008; (2) Petitioner's liberty was restrained by another sovereign, not the state; and (3) Petitioner's federal incarceration arguably meant that he did not face the same degree of loss of employment or reputation before his state trial as a free person would have, reasonable jurists could disagree on whether the state violated Petitioner's Sixth Amendment rights.

When reasonable jurists can disagree, AEDPA requires the federal habeas court to defer to the state court's decision even if it would have reached a different decision if the case had come before it in the first instance. If this case had come before this Court in the first instance, the Court would be inclined to agree with Magistrate Judge Nagle's conclusion that Petitioner's speedy trial rights were implicated and that they were violated by the state prosecutors' negligent delay. *See* R&R at 19:16-32:17. However, because reasonable jurists could disagree with this analysis, the legally correct answer under AEDPA is to defer to the state court's decision and thus to decline to adopt Magistrate Judge Nagle's R&R.

### IV. Disposition

For the reasons above, the Court ORDERS as follows:

(1) The Court DECLINES TO ADOPT the portions of Magistrate Judge Nagle's R&R analyzing the reasonableness of the state court's decision and the Magistrate Judge's own Sixth Amendment analysis, *see* R&R at 16:15-32:17;

---

without an arrest, does not trigger the federal Speedy Trial Clause, the California Supreme Court noted that "[i]t may well be that the Supreme Court's language [in *Marion*] simply reflects a dissimilarity in labels between our state's prosecutorial procedures and those in other jurisdictions. On the other hand, our perception is that the phrase 'holding to answer' is generally accepted to refer in a technical sense, as it does in California, to the decision of a magistrate to bind a defendant over for trial following a preliminary hearing." *Id.* at 605. The California Court of Appeals relied on *Hannon* (which was cited in *People v. Martinez*, 22 Cal. 4th 750,754 (2000)) in reaching its decision in this case. *People v. Mann*, 2011 Cal. App. Unpub. LEXIS 4236, at *3 (June 7, 2011).

7

1     (2) The Court ADOPTS the remainder of the R&R; and

2     (3) Petitioner's § 2254 petition for writ of habeas corpus is DENIED.

4     DATED:     January 13, 2015

*[signature: David O. Carter]*

    DAVID O. CARTER
    UNITED STATES DISTRICT JUDGE